IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


JAMES IVY DAVIS,

      Petitioner,      Case No. 2:12-cv-01743-ST

   v.

MR. NOOTH, MARCK,      FINDINGS AND RECOMMENDATION
Mr. Superintendent Nooth,

      Respondent.


STEWART, Magistrate Judge:

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery, Felon in Possession of a Firearm, and Attempt to Elude. For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied.

## BACKGROUND

The Oregon Court of Appeals set out the factual background for petitioner's case as follows:

> On the night of December 22, 2000, Terry Weaver, the owner of the Spare Room Lounge in northeast Portland, was tending bar. The Spare Room is divided into two separate areas known as the

1 - FINDINGS AND RECOMMENDATION

"front bar" and the "back bar." Weaver was behind the front bar along with two employees, Anna Higgins and Patricia Alcorn. Alcorn was standing near the entrance to the kitchen. Two customers, Lori Owens and Joyce Hansen, were sitting on bar stools at the front bar, and Ernest Brumitt and William Lambert, also customers, were in the back bar.

At approximately 10:45 p.m., two masked men walked through the front door into the front bar. The men fired two shots into the ceiling of the lounge and ordered everyone to get down. As that occurred, Alcorn slipped into the kitchen to call 9-1-1. One of the men then ran towards the bar, pointed a gun at Higgins's chest, and demanded money. That same man then approached Weaver, pointed the gun at his head, and again demanded money. Weaver complied with the demand and began handing over money, first from the lounge's cash register and then from the lottery till. Owens and Hansen got down on the floor, and both felt threatened and intimidated by the gun shots and the perpetrator's actions. Alcorn, who was frightened by the gunfire, was put on hold by a 9-1-1 operator and watched through a small cook's window in the kitchen as one of the perpetrators ran past the bar. She then hid behind a walk-in refrigerator for protection.

Lambert and Brumitt, the patrons who were in the back bar, heard the gunshots and went to the front bar to see what was happening. As they watched the first man point the gun at Weaver, they tried to approach. However, the second man saw them and fired two more shots into the ceiling. Lambert and Brumitt, who felt threatened and scared, got down on the floor. The man who took the money then ran around the bar, fired several shots into the ceiling, and, after meeting up with his cohort, ran out the door.

*State v. Davis/Hamilton*, 194 Or. App. 382, 385-86, 95 P.3d 230 (2004),

*adh'd to as modified on recons* 197 Or. App. 1, 104 P.3d 602, *rev. denied*

339 Or. 230 (2005).

///

2 - FINDINGS AND RECOMMENDATION

Portland Police Officer Gore responded to the robbery and observed a blue Cadillac in the vicinity which was traveling so quickly it was unable to stop at a stop sign. Trial Transcript, p. 395. Because the windows of the car were rolled up and heavily tinted, Officer Gore was unable to determine how many occupants were in the car until he observed them through the back window which was not as heavily tinted. *Id* at 46. Officer Gore pulled the Cadillac over and called for cover, prompting Officer Kennard to respond.

Officer Kennard parked his police cruiser behind Officer Gore, exited, and approached the Cadillac from the passenger side while Officer Gore ordered the occupants to exit the car with their hands up. Within a few seconds, the Cadillac sped off, made a U-turn, and a car chase ensued. Officer Kennard later testified that as the Cadillac made the U-turn, he made eye contact with petitioner who was driving the car with its window rolled down. *Id* at 474-78.

Officer Gore's police cruiser ultimately collided with the Cadillac, and the officers continued to chase its two occupants on foot. Petitioner's co-defendant was taken down by a police dog, and petitioner entered the apartment of a friend, Terry Jackson. *Id* at 566-67. Petitioner appeared nervous and stayed at the apartment for several hours at which point the police, having been alerted to the area by a K-9 unit, knocked on the door. This prompted petitioner to hide in the attic of the apartment. *Id* at 571. When police entered, they noticed parts of the sheetrock falling from the ceiling.

3 - FINDINGS AND RECOMMENDATION

*Id* at 724.   Petitioner then fell through the ceiling and fled back up the stairs before authorities ultimately took him into custody. *Id* at 724-27.

Petitioner and his co-defendant proceeded to a joint jury trial. Although Officer Kinnard did not state in his initial police report that he was able to identify the suspect, at trial he identified petitioner as the driver of the Cadillac.  Petitioner's Exhibit A. Officer Kennard claimed he did not think his ability to identify petitioner was important due to a flyer that had been circulated at the police station shortly after petitioner's arrest.  He testified: "I learned of the identity of the defendants in the information from the all box several days later.   There was a flyer that indicated that they had been arrested in connection with a tavern robbery. . . ." *Id* at 480.  The flyer was not produced during the criminal trial or at petitioner's state post-conviction action, and petitioner's counsel did not move to exclude the identification based upon the flyer.

At the close of the State's case, petitioner's counsel made a Motion for Judgment of Acquittal, principally focusing on the statutory definition of Robbery under ORS 164.395.  Specifically, trial counsel argued that petitioner could not be guilty of robbing the customers of the bar where "there was no evidence that anyone pointed a weapon at any of these people, and there was no evidence that any one of the alleged defendants demanded or took any money or

anything of value from any of those individuals." *Id* at 972.  The
trial court denied the motion, and denied it again when raised at the
close of all evidence.  *Id* at 1122-26.

The jury convicted petitioner of seven counts of Robbery in the
First Degree, seven counts of Robbery in the Second Degree, one count
of Felon in Possession of a Weapon, and one count of Attempt to Elude.
Respondent's Exhibit 101.  As a result, the trial court imposed
consecutive sentences totaling 360 months in prison.

Petitioner filed a direct appeal, and the Oregon Court of Appeals
affirmed the convictions in a written opinion.  *State v. Davis*, 194
Or. App. 382, 85 P.3d 230 (2004).  Petitioner sought reconsideration,
and the Oregon Court of Appeals adhered to its decision as to
petitioner's convictions, but remanded the case based on a
resentencing issue not relevant to this habeas corpus proceeding.
197 Or. App. 1, 104 P.3d 602 (2005).  The Oregon Supreme Court denied
review.  339 Or. 230, 119 P.3d 790 (2005).

Petitioner next filed for post-conviction relief ("PCR") in
Marion County which was denied.  Respondent's Exhibits 143-45.  The
Oregon Court of Appeals affirmed the PCR trial court's decision
without opinion, and the Oregon Supreme Court denied review.  *Davis
v. Premo*, 248 Or. App. 262, 274 P.3d 896, *rev. denied* 352 Or. 170,
285 P.3d 720 (2012).

Petitioner filed this habeas corpus case on September 26, 2012,
alleging four grounds for relief:

5 - FINDINGS AND RECOMMENDATION

1.    Trial counsel was ineffective when he failed to adequately argue in his Motion for Judgment of Acquittal that Officer Kennard's testimony was incredible;

2.    Trial counsel was ineffective when he failed to move to controvert the affidavit of probable cause that supported petitioner's detention;

3.    Trial counsel was ineffective when he did not move to preclude Officer Kennard's in-court identification of petitioner; and

4.    Petitioner's convictions are invalid because they are primarily based on racial animus.

Petition for Writ of Habeas Corpus (docket #1), pp. 6-7.

Respondent asks the court to deny relief on the Petition because: (1) the PCR trial court's decision denying the claims of ineffective assistance of counsel reasonably applied federal law; and (2) Ground Four is procedurally defaulted.

**<u>FINDINGS</u>**

## I.    <u>Standard of Review</u>

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden

of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

## II.  Grounds One & Three: Counsel's Failure to Challenge Officer Kennard's Identification

Petitioner alleges that his trial counsel's performance fell below an objective standard of reasonableness by failing to argue in his Motion for Judgment of Acquittal that Officer Kennard's testimony was not believable.  He believes that in the absence of that identification, the other evidence of his involvement in the tavern

robbery was legally insufficient to support a conviction. Alternatively, he claims that his trial counsel rendered ineffective assistance by failing to move to exclude Officer Kennard's in-court identification of him because it was tainted by the flyer circulated at the police precinct.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review

8 - FINDINGS AND RECOMMENDATION

governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. 123.

The PCR trial court rejected petitioner's claims, concluding that: (1) petitioner failed to prove his trial  counsel was ineffective when he failed to file a motion to suppress Officer Kennard's identification; and (2) his trial counsel made a well-reasoned choice as to the argument made in his Motion for Judgment of Acquittal.  Respondent's Exhibit 144, p. 5.  In reaching these conclusions, the PCR trial court made the following relevant factual findings:

> 2.   Officer Kennard testified that he saw Petitioner at the scene of the traffic stop.  He testified that when he saw the suspect vehicle, the driver's window was down.  When the suspect vehicle executed a u-turn, Kennard ran into the street and saw both the driver and the passenger.  Later, Officer Kennard pointed to the Petitioner in trial, "identifying" the Petitioner as the driver.

> 3.   To find that Officer Kennard's in court identification of the Petitioner was tainted by the "flyer" the Court would need to find that Officer Kennard testified untruthfully about viewing [] the Petitioner in the car on the night in question.  When Officer Kennard testified at trial, he stated that he viewed the Petitioner eye to eye on the night of the robbery.  Although Officer Kennard did not write about his ability to later "identify" the driver, the officer's explanation of why he did not write the information in his reports seems plausible to this Court. The officer did not write that he saw the suspect or write in his report that he could identify the suspect, because he did not

know the name of the suspect, he knew based
on the facts and circumstances surrounding
the events of the evening that the driver
of the suspect vehicle was the person taken
into custody that night.    Officer Kennard
who made the out of court identification,
testified that he learned of the identity
of the defendant several days after his
arrest based on information contained in
the flyer.

4.    There is evidence in this record that trial
counsel did pursue a Motion for Judgment of
Acquittal.    Trial counsel decided to
pursue the Motion for Judgment of Acquittal
by focusing the court's attention on the
definition of robbery found in ORS 164.395.
Counsel argued that since none of the
customers in the bar had their personal
possessions taken, the customer[]s were
not robbed.    There is no evidence in the
record that Petitioner objected to
counsel's line of argument.

*Id* at 3-4.

Petitioner points out that Officer Kennard's testimony of the
Cadillac's windows in the "down" position was controverted by the
following: (1) Officer Gore could not discern the Cadillac's
occupants at the beginning of the chase because he could not see
through the heavily tinted side windows; (2) Officer Kennard
identified a photograph at trial showing the Cadillac at the crash
site with its windows rolled up; and (3) Officer Kennard's five-page
report of the incident never mentioned the driver's window being down
or that he was able to clearly see petitioner.    Trial Transcript,
pp. 47, 525-57; Petitioner's Exhibit A.    He claims that, given the
speed at which the events unfolded, the fact that the windows were

10 - FINDINGS AND RECOMMENDATION

rolled up at the start and end of the chase, Officer Kennard's version of events defies common sense.

When Officer Gore initiated the traffic stop, petitioner initially pulled the Cadillac over in apparent compliance. It is impossible to know what petitioner and his co-defendant had in mind at that time. Given the time frame of the robbery, Officer Gore felt this car might have been involved in the Spare Room Lounge robbery. Trial Transcript, p. 47. As a result, he considered it a high-risk stop and, instead of approaching the car as in a routine traffic stop, he ordered the occupants to exit the car with their hands up. *Id* at 49.

It is not unreasonable to conclude that petitioner, while believing Officer Gore might approach the car, could have rolled his window down during the traffic stop. Perhaps petitioner wished to give Officer Gore the appearance of full cooperation so additional units would not be alerted. Perhaps petitioner intended to draw Officer Gore from his vehicle before speeding away in the hopes of successfully eluding the officer. Alternatively, when his co-defendant later fired gunshots at Officer Gore during the pursuit, it is conceivable that petitioner wished to draw Officer Gore into point-blank range. These are all plausible explanations which would account for Officer Kennard's version of events, rendering his testimony credible.

///

11 - FINDINGS AND RECOMMENDATION

Trial counsel felt the best focus of his Motion for Judgment of Acquittal on five of the seven robbery counts was the lack of evidence that petitioner and his co-defendant pointed a weapon at five of the individuals present at the tavern, demanded anything of value from them, or took anything of value from them. Although this argument ultimately proved to be unsuccessful, it was a reasonable tactical choice and constitutes the kind of strategic decision to which courts afford a high level of deference. *See Strickland*, 466 U.S. at 689.

Petitioner also argues that even if Officer Kennard's identification of him was credible, due process required its exclusion as tainted by a suggestive pretrial identification process, *i.e.*, the police flyer. Although petitioner faults trial counsel for not moving to suppress the identification, Officer Kennard specifically testified that he identified petitioner prior to seeing the police flyer and that he did not believe petitioner's identity had been an issue in the case. Trial Transcript, pp. 474, 476, 519. It is apparent from the PCR trial court's Findings of Fact that it found Officer Kennard to be credible, and this court is bound by such a credibility determination absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner does not present the court with such evidence.

Even if trial counsel's performance fell below an objective standard of reasonableness, petitioner has failed to demonstrate prejudice resulting from any such failures. Assuming trial counsel

could have impeached Officer Kennard's identification, the facts still showed that a police dog tracked petitioner's scent to the small housing group of four apartments where petitioner had fled, was hiding from the police, and fell through the attic floor while attempting to evade the police. After falling through the ceiling, petitioner again ran from the officers even though they had drawn their weapons and ordered him to stop.

In addition, a glove with petitioner's DNA was taken from the Cadillac. Trial Transcript, p. 930. Petitioner did not offer any explanation as to why his DNA was found in the getaway car irrespective of whether he was wearing the glove during the robbery.

Moreover, a revolver with two live rounds and three spent casings was later found on the roof of the apartment building where petitioner was discovered hiding from the police. It appeared petitioner had cryptically asked a friend to retrieve the revolver for him during recorded jail conversations when he asked his friend to do a "superman" or a "spiderman" in order to get a "boom boom" from the roof. *Id* at 138-39, 1221-22. He also asked for an alibi and told his girlfriend he was incarcerated because he was attempting to make a nice Christmas for her. *Id* at 138, 1218-19.

Based on all of this evidence, even if trial counsel should have more fervently challenged Officer Kennard's identification, it is doubtful the outcome of the trial would have been different. Consequently, the PCR trial court's decision denying relief on

Grounds One and Three is neither contrary to, nor an unreasonable application of, clearly established federal law.

III. **Ground Two: Counsel's Failure to Move to Suppress Affidavit of Probable Cause**

Petitioner also asserts that his trial attorney was constitutionally ineffective by failing to move to suppress the affidavit of probable cause leading to his pretrial detention. He claims that the affidavit hinged on two false and misleading statements that: (1) the police dog alerted to 5155 NE Killingsworth (the specific address where petitioner was ultimately apprehended) when it actually alerted to the "area" of 5155 NE Killingsworth; and (2) petitioner told one of the apartment's occupants, Steve Stone, that the police were after him when, in fact, he did not make that statement.

The PCR trial court resolved this issue as follows:

> In the present case, there are inaccuracies in the affidavits of Det. John Cordell and of Det. Wayne Svilar. The affidavits contain information stating that the dog track led to 5155 NE Killingsworth and that witness Steve Stone said Petitioner came in the sliding glass door, stating the police were after him. The correct facts are that the dog tracked to the area of 5155 NE Killingsworth and that Steve Stone's description of the man who entered the apartment through the sliding glass door was that of a man who acted like the police were after him. Comparing the inaccurate statements to the accurate statements, it appears to this Court that the inaccurate statements were at most negligent. This Court finds no reason to find the inaccurate statements to be intentional lies, nor offered in bad faith.

14 - FINDINGS AND RECOMMENDATION

* * *

In deciding a motion to controvert and subsequent motion to suppress, negligent statements in an affidavit need not be excised. The case law requires that the entire supporting affidavit be re-examined in light of the contradictory statements given at the hearing. After learning of conflicting information the Court then must inquire, "Would the magistrate as a reasonable and cautious man have issued the warrant if he had known the correct facts and drawn the correct inferences in" deciding the question of probable cause.    In this case, this Court finds, despite the inaccuracies contained in the affidavits, a magistrate, as a reasonable, cautious person, still would have found probable cause to issue a warrant for Petitioner's saliva.    As to the affidavit in support of the Petitioner's arrest and detention, even if counsel had successfully attacked the affidavit in a motion to controvert, the granting of such a motion would not have impacted on the outcome of the trial. A probable cause statement justifying arrest is submitted to the Court in support of pre-trial detention.    If trial counsel had prevailed on a motion to controvert the affidavit, the only potential remedy would have been the release of the Petitioner awaiting trial.    Petitioner has failed to prove that his attorney provided ineffective assistance of counsel when he failed to file Motions to Controvert the truthfulness of the affidavits.    Further, Petitioner has failed to prove that his attorney provided ineffective assistance of counsel when he failed to file Motions to Suppress regarding a lack of probable cause for arrest, detention and warrant for petitioner's saliva.

Respondent's Exhibit 144, pp. 4-5 (internal citations omitted).

The discrepancies between the affidavit of probable cause and the police reports are not sufficiently significant to materially affect the probable cause analysis.    The police dog alerted to two

15 - FINDINGS AND RECOMMENDATION

specific doorways in the four-apartment complex where petitioner was
hiding.   The fact that the dog alerted to the apartment next to the
one in which petitioner was hiding is not significant.   While it is
more significant that petitioner never stated to Stone that the police
were after him, his actions gave clearly gave that impression.
Petitioner told Stone he was paranoid due to the police presence and
called his girlfriend to determine whether authorities were still in
the area.   Respondent's Exhibit 126, pp. 1, 3.   When the police
ultimately approached the apartment door of 5155 NE Killingsworth,
petitioner hid in the attic.   When he fell through the apartment's
ceiling, he fled from the responding officers despite their orders
to stop.   Thus, while petitioner may not have expressly told Stone
that he was hiding from the police, his actions gave every indication
of that frame of mind.   The court therefore concludes that these
discrepancies were insufficient to require trial counsel to challenge
the affidavit of probable cause.

Moreover, no evidence was adduced during the PCR trial that the
misstatements in the affidavit of probable cause were either
intentional or reckless so as to result in a successful challenge to
the affidavit.   *See Franks v. Delaware*, 438 U.S. 154,155-56 (1978)
(requiring police misrepresentation to be knowing, intentional, or
with reckless disregard for the truth).

With respect to the prejudice analysis, petitioner disagrees
with the PCR trial court's conclusion that this issue affected only

his pretrial incarceration.  He argues that because he was in pretrial detention, he opposed every continuance.  He believes that controverting the probable cause affidavit would likely have secured his pretrial release and placed him in a position not to insist on exercising his right to a speedy trial.  In turn, he contends that the defense would have been allowed more time to prepare for trial and that the State would not have obtained inculpatory evidence by monitoring his telephone calls from the jail.  Had all of this come to pass, he believes that the jury would not have convicted him.

Petitioner's argument is simply too attenuated to show that but for any error on trial counsel's part, the result of his trial would have been different.  For these reasons, the PCR trial court's decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## IV. <u>Ground Four: Racial Animus</u>

Finally, petitioner claims that his prosecution was the result of racial animus.  Petitioner does not provide any briefing to support his fourth ground for relief, but does not wish to abandon it.  The court has reviewed petitioner's Ground Four claim and determined that it does not entitle him to habeas corpus relief.

///

///

///

///

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #1) should be denied, and a judgment should be entered dismissing this case with prejudice.   The court also should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.   Objections, if any, are due March 6, 2015.   If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 17th day of February, 2015.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge


18 - FINDINGS AND RECOMMENDATION